### UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF FLORIDA

**CASE NO. 22-CV-22509**

LITTLE RIVER TRANSPORT, LLC,

      Plaintiff,

v.

OINK OINK, LLC,

      Defendant.

_____ /

### COMPLAINT

Plaintiff, Little River Transport, LLC ("Little River"), by and through its undersigned attorneys, hereby alleges against Defendant, Oink Oink, LLC, ("Oink"), based on personal knowledge as to its own acts and on information and belief after investigation by counsel as to all other matters, as follows:

### INTRODUCTION

1. This case is about an escrow agent, Oink, that materially breached its escrow agreement by disbursing escrowed funds in violation of the express terms of its Escrow Agreement and who otherwise is withholding without legal justification monies belonging to Little River.

2. Little River, a buyer of coal, non-party Mineral Coals Logistica, SAS ("MCL"), a seller of coal, and Oink, an escrow agent, are parties to a Critical Material Purchase Escrow Agreement, dated April 8, 2022 and amended on May 4, 2022. Attached hereto as Exhibits 1 and 2 (together, the "Escrow Agreement").

3. Little River deposited $6,420,000 with Oink to cover the purchase price of a coal delivery, which MCL said would be arriving no later than May 15, 2022.  Under the Escrow

Agreement, Oink was not authorized to disburse any portion of the funds deposited pursuant to the Escrow Agreement to MCL except upon the satisfaction of contractually specified conditions, including Little River and MCL's mutual written consent and instruction.  *See* Ex. 2 at C.

4.     Those contractually specified conditions for disbursement under the Escrow Agreement were not met.  MCL never procured or scheduled delivery of *any* coal, let alone coal that was certified as meeting the agreed specifications.  And Little River never consented to *any* disbursement of any funds by Oink.  Nevertheless, Oink disbursed $1,020,000 to MCL without the requisite authority and now wishes to withhold from Little River indefinitely the remaining $5,400,000 balance without legal justification.

5.     Little River brings this action to recover from Oink all funds it deposited with Oink and additional damages Little River has suffered solely as a result of Oink's gross negligence, bad faith, and/or willful conduct in connection with Oink's material breach of the Escrow Agreement.

## THE PARTIES

6.     Plaintiff, Little River Transport, LLC, is a Delaware Limited Liability Company headquartered in West Virginia.  It connects coal consumers in Latin America, the Caribbean, and Asia with dependable, high-quality coal from suppliers in the United States and across the globe.

7.     Defendant, Oink Oink, LLC, is a Delaware Limited Liability Company, doing business in Florida, with offices at 1436 W. 49th St., Hialeah, Florida 33012-3219.  *See* Ex. 1 at Exhibit "B". Oink was designated to serve as the escrow agent for certain of the funds which are the subject of this action

## THE OINK-CONTROLLED ACCOUNT

8.     Pursuant to the express terms of the Escrow Agreement, the Oink account to which Little River wired all deposited funds is a bank account located in the Southern District of Florida

at the JPMorgan Chase Bank, N.A. branch office at 2495 NW 87th Avenue, Doral, Florida 33172. *See* Ex. 1 at Exhibit "B".

### JURISDICTION AND VENUE

9.      Oink is a limited liability company with two members, one of whom is a citizen of Colombia and the other of whom is a citizen of Costa Rica.  As such, Oink is a citizen of a foreign state for purposes of diversity jurisdiction.

10.      Little River is a limited liability Company, whose sole member is a corporation incorporated in the state of Wyoming.

11.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(2) because Little River is a citizen of Wyoming and Oink is a citizen of a foreign state and the amount in controversy exceeds $75,000.

12.      This Court has *in rem* jurisdiction over the Oink escrow account and funds at issue, which are located in Miami Dade County, Florida.

13.      This Court also has personal jurisdiction over Oink under Fla. Stat. Ann. § 48.193, and venue is proper in the Southern District of Florida pursuant to 28 U.S.C. § 1391(b)(2) based on the following facts:

    a.  By signing the Escrow Agreement, Oink "irrevocably and unconditionally consent[ed] to the sole and exclusive jurisdiction of the state and federal courts in Dade County, Florida."  Ex. 1 at p.4 (Miscellaneous paragraph 1 (b));

    b.  Oink has offices in the Southern District of Florida located at 1095 W 44th Terr., Hialeah, Florida 33012, as per the Escrow Agreement (Ex. 1 at "Exhibit B"), and as per a Know-Your-Customer disclosure Oink provided to Little River. Attached hereto as Exhibit 3;

   c.   All of the funds at issue in this mater, which Little River deposited with Oink, originated from a bank account located in the Southern District of Florida at the Banco Sabadell's branch at the Sabadell Financial Center, 1111 Brickell Ave. 30th Floor, Miami, Florida 33131. Ex. 1 at Exhibit "C";

   d.   All of the funds at issue in this matter, were wired by little River to Oink's bank account located in the Southern District of Florida at the JPMorgan Chase Bank, N.A. branch office at 2495 NW 87th Ave., Doral, Florida 33172. Ex. 1 at Exhibit "B"; and

   e.   All of the remaining disputed funds continue to be held in the bank account located in the Southern District of Florida at the JPMorgan Chase Bank, N.A. branch office in Doral, Florida.

## FACTUAL BACKGROUND

14.    Little River won a bid to supply coal to a power plant in the Dominican Republic. To meet its obligations under that contract, Little River sought to procure the necessary coal from MCL, a Colombian entity.

15.    MCL and Little River originally contemplated using an irrevocable letter of credit mechanism to fund payment for each delivery of coal under their commercial arrangement.

16.    By its terms, the letter of credit funded by Little River in anticipation of a coal delivery would expire within a stated time period—21 days—so if MCL failed to make delivery as scheduled and/or tender the required documentation certifying the quantity and quality of the coal, the letter of credit would lapse and Little River would regain unfettered access to its funds.

17.    Because of issues they encountered with using an irrevocable letter of credit, the parties chose instead to use an escrow account mechanism.  MCL advised Little River that its

willingness to use an escrow mechanism was predicated on Little River agreeing to use Oink, a firm unknown to Little River, as the escrow agent.

**The Escrow Agreement**

18.     On April 8, 2022, Oink, Little River, and MCL entered into an escrow agreement that was subsequently amended effective May 4, 2022.  *See* Exs. 1 & 2.

19.     Oink knew or should reasonably have known at the time of the Escrow Agreement that the funds Little River was depositing with Oink were necessary to fulfill Little River's contract to supply coal to its client in the Dominican Republic and that, if no coal was delivered and deposited funds became inaccessible for an indefinite period, Little River would have to finance at additional expense the cost of buying substitute coal.

20.     The Escrow Agreement contemplates that, to cover the first delivery of coal, which MCL would deliver between May 5 and May 15, Little River would fund the Oink escrow account in three installments, with each installment due only upon the occurrence of the following contractual conditions:

21.     *First*, Little River was required to deposit within 72 hours of signing the April 8 Escrow Agreement a "First Installment to Advance Payment" equal to $1,020,000.  *See* Ex. 1 at 1.

22.     *Second*, pursuant to a change to the Escrow Agreement reflected in the May 4 amendment, Little River would deposit a "Second Installment to Advance Payment," also in the amount of $1,020,000.  The amendment states that Little River "will deliver" this deposit between May 1 and 5, 2022 (even though the amendment was not fully executed until May 4).  *See* Ex. 2 at A(ii).

23.     *Third*, also pursuant to the May 4 amendment, Little River would deposit into escrow with Oink an additional $5,400,000.  The amendment states that Little River will deliver this third installment "[n]ot later than 3 (three) banking days after receipt" by Little River of (a) "documentation fixing the Laycan Date period," (b) "an SGS Report of the product offered, dated no longer than 5 (five) calendar days prior [to] the receipt by [Little River] of such SGS Report," and (c) "the acceptance by the vessel operator of the Laycan Date." *See*  Ex. 2 at A(iii).

24.     The "Laycan Date" is the date when the coal is actually scheduled for delivery by MCL, the seller, onto a vessel designated by Little River, the buyer.  An "SGS Report" is a certification from SGS, an industry standards organization, that validates the quality and quantity of the coal.

25.     By the time of the May 4 amendment to the Escrow Agreement, the price of coal had risen.  MCL indicated to Little River that MCL was increasing the price of the first coal delivery from $108.00 per metric ton, as originally contemplated in March, to $124.00 per metric ton.  Little River agreed to this price increase, which is reflected in the Escrow Agreement.  *See* Ex. 2 at A.

26.     The three installments Little River was required to deposit pursuant to the Escrow Agreement equaled in the aggregate the estimated purchase price of MCL's first coal delivery, which would be for 60,000 metric tons at the price of $124.00 per metric ton, for a total of $7,440,000.  *See* Ex. 2 at A.

27.     Little River deposited with Oink the first two installments that were due and owing under the Escrow Agreement.

28.     As to the First Installment to Advance Payment, Little River deposited $1,020,000 into escrow by wire transfer on April 11, 2022 to Oink's JPMorgan account in Doral, Florida.

29.     As to the Second Installment to Advance Payment, Little River transferred $1,020,000 into escrow by wire transfer on May 11, 2022 to Oink's JPMorgan account in Doral, Florida.

30.     Little River delayed transfer of the Second Installment to Advance Payment by almost a week because MCL had tendered to Little River on April 30, 2022 what turned out to be a forged SGS Report.  Little River learned of the forgery after it requested verification of the certification directly from SGS, and SGS advised Little River in writing that the certification was, in fact, a forgery and should be disregarded.  *See* attached Exhibit 4.  Little River raised the forgery issue with MCL, which assured Little River that it was not responsible for the forgery and that it was, in fact, procuring the necessary coal for the first purchase order and would deliver it by May 15 in accordance with the Escrow Agreement.  Little River accepted MCL's assurance at the time, but now believes it was false.

31.     As to the third installment, MCL never satisfied any of the conditions under the Escrow Agreement necessary to require funding of the third installment:  It did not tender any documentation fixing a Laycan Date or a valid SGS Report verifying the quality and quantity of coal.  *See* Ex. 2 at 2.

32.     When Little River transferred the Second Installment to Advancement Payment to Oink, Little River also wired to Oink an additional $4,380,000, even though such amount was not due and owing or required under the Escrow Agreement.  Little River deposited this additional amount with Oink based on assurances that having such funds on deposit with Oink would facilitate and ostensibly expedite delivery of the first purchase order, which Little River was becoming desperate to receive.  Such assurances proved to be false.

33.     In total, Little River deposited $6,420,000 with Oink, $2,040,000 pursuant to the terms of the Escrow Agreement and $4,380,000 based on oral assurances even though such amount was not expressly required by the Escrow Agreement.

34.     All funds deposited with Oink were wired from an account in the Southern District of Florida to an Oink-controlled account located in the Southern District of Florida.

35.     Upon information and belief, Little River's funds that have not been disbursed by Oink remain in that account.

**The Escrow Agreement's Conditions For Disbursement**

36.     The Escrow Agreement, as amended, contains two paragraphs regarding Oink's authority to disburse funds deposited by Little River.

37.     *First*, "[u]pon receipt of a joint written instruction of Buyer and Seller (a 'Joint Release Instruction') with respect to the Escrow Funds, the Escrow Agent shall promptly, but in any event within two (2) Business Days after receipt of such Joint Release Instruction, disburse all or part of the Escrow Funds in accordance with such Joint Release Instruction." *See* Ex. 2 at C.

38.     *Second*, "[a]s a condition to the release of the Escrow Funds by the Escrow and Fiduciary Advisor corresponding to the second installment described per Section 2 (two) above, [which concerns the Second Installment to Advance Payment], Seller must comply with the following delivery of documentary schedules and criteria met:

i.    Laycan Date shall be any date between May 5 and May 15th as agreed by and between Buyer and Seller (the "Laycan Date").  Provided however, that this date can be modified or updated to a then new Laycan Date by written subsequent Amendment to the Agreement by and between Seller and Buyer.

ii.   SGS Colombia will be retained by the BUYER, to supervise the aggregating process, prior to loading and provide Weekly Progress Reports (the "SGS Report"). SGS should be granted access to the premise where the Coal is located, to inspect the process, and tabulate the Quantities and Quality, as the product is being prepared prior to loading.

iii.  2 originals and 4 copies of the SGS Report confirming Weight/Quantity of Products.

iv.  2 Originals and 4 Copies of the SGS Report confirming Quality of Products, as per SGS Colombia terms and conditions.

v.  2 Originals and 4 copies of the "Certificate of Origin of the Coal" on Vessel.

vi.  4 originals and 4 copies of the Bill of Lading from End User Vessel, confirming dates, quantity, and merchandize, and final destination.

vii.  4 originals and 4 copies of the Commercial Invoice."

*See* Ex. 2 at B.

39.  Little River required these provisions to ensure that Oink could not release any funds to MCL until Little River could verify that MCL was actually procuring the first delivery of coal that was promised to Little River.

**Oink Unlawfully Disburses $1,020,000**

40.  Oink acknowledges that it disbursed $1,020,000 to MCL without receiving any Joint Release Instruction executed by Little River and even though none of the conditions for release of the Second Installment to Advance Payment set forth above were satisfied.  This was a material breach by Oink of its obligations under the Escrow Agreement.

41.  Initially, on June 1, 2022, after apologizing to Little River regarding its difficulties in procuring and delivering coal, MCL assured Little River that no portion of the deposited funds had been disbursed and that the funds would be returned to Little River.

42.  As of this date, more than 120 days have elapsed since Little River deposited with Oink the First Installment and more than 90 days have elapsed since Little River deposited with Oink the Second Installment, plus the additional $4,380,000 (which, again, was never even required under the Escrow Agreement).  No funds have been returned to Little River despite

repeated demands.  With more than $6,000,000 tied up in the Oink account, Little River has been severely prejudiced and damaged.

**Little River Demands Return Of All Funds Deposited With Oink**

43.     On June 2, 2022, with the dates for MCL making its first delivery of coal long past, Little River wrote to Oink to demand the return of all deposited funds, as had been suggested by MCL the prior day.  *See* Ex. 5.  Oink did not respond.

44.     On June 14, 2022, contrary to prior assurances that were given to Little River, Oink admitted to Little River that Oink had already disbursed $1,020,000 from the escrow account.

45.     Oink's disbursement of the $1,020,000 was a material breach of the Escrow Agreement by Oink.  It also constitutes gross negligence, bad faith, and/or willful conduct as part of Oink's material breach of the Escrow Agreement that has caused Little River damages.

46.     Because of Oink's material breach of the Escrow Agreement, Little River is entitled to immediate return of the full amount of funds deposited with Oink, including the $4,380,000 that Little River was under no obligation to deposit.

47.     Moreover, although the Escrow Agreement is silent regarding the circumstances under which Oink is required to return deposited funds to Little River, the parties to the Escrow Agreement intended that deposited funds would be returned to Little River if MCL failed to make delivery of the specified coal within a reasonable period of time after Little River's deposit.

48.     Little River deposited the funds with Oink in two installments, one each on April 11 and May 11, 2022, to cover in part the anticipated purchase price of coal that MCL said it would deliver by May 15, 2022.   As of the date of this filing, no coal has been delivered.

49.     On July 7, 2022, Little River sent Oink a notice of default under the Escrow Agreement.  It demanded, for the second time, the return of all of Little River's funds that have been deposited with Oink.

50.     On July 19, 2022, having received no response to its letter sent almost two weeks earlier, Little River sent Oink another letter, reiterating its demand for the return of its deposited funds.

51.     On July 20, 2022, Oink responded to Little River, admitting that Oink disbursed $1,020,000 of Little River's funds to MCL, in breach of the Escrow Agreement, and refusing without legal justification to return any of the deposited funds to Little River.

52.     Oink has materially breached the terms of the Escrow Agreement and is liable for damages caused by Oink's "gross negligence, bad faith, [and] willful misconduct."  *See* Ex. 2 at paragraph 5(e).  Such damages include, but are not limited to, the costs that Little River has incurred to secure substitute performance stemming from its inability to access its deposited funds.

## COUNT I

### Breach of Contract – Wrongful Disbursement

53.     Little River re-alleges all of the allegations in the foregoing paragraphs as if reasserted herein.

54.     Little River and Oink entered into the Escrow Agreement.

55.     Little River deposited funds into escrow with Oink pursuant to the Escrow Agreement.

56.     The Escrow Agreement conditions Oink's disbursement of deposited funds upon Oink's receipt of a Joint Release Instruction from both Little River and MCL.

57.     This condition was not met.  Nor were any of the other conditions concerning disbursement of the second installment met.

58.     Nevertheless, Oink disbursed $1,020,000 to MCL.

59.     This disbursement constitutes a material breach of the Escrow Agreement and further represent gross negligence, bad faith, and/or willful conduct.

60.     As a result of this material breach, Oink must restore the $1,020,000 that was improperly disbursed, plus interest, and immediately return to Little River $6,420,000, plus interest and consequential damages in an amount to be proven at trial.

## COUNT II

### Breach of Contract – Wrongful Withholding of Deposited Funds

61.     Little River re-alleges all of the allegations in the foregoing paragraphs as if reasserted herein.

62.     Little River deposited $6,420,000 with Oink, including $4,380,000 that Little River was not obligated to deposit under the Escrow Agreement.

63.     Although the Escrow Agreement is silent on its face as to the circumstances under which Little River is entitled to a return of funds deposited with Oink, the parties to the Escrow Agreement mutually intended that Oink would return all deposited amounts to Little River in the event that MCL failed to make delivery of the specified coal in accordance with the Escrow Agreement within a reasonable period of time after Little River's deposits.

64.     MCL failed to make delivery of any coal to Little River within a reasonable period of time after Little River's deposits.  To date, more than 116 days have elapsed since Little River's first deposit and more than 86 days have elapsed since its second deposit.

65.     Oink's refusal to return the deposited funds to Little River is therefore a breach of the Escrow Agreement.

66.     As a result of the breach, Little River is entitled to the immediate return of its $6,420,000, including $4,380,000 Little River was not obligated to deposit under the Escrow Agreement, plus interest and consequential damages in an amount to be proven at trial.

## COUNT III

### Constructive Trust Over All Escrowed Funds

67.     Little River re-alleges all of the allegations in the foregoing paragraphs as if reasserted herein.

68.     Little River and Oink entered into the Escrow Agreement.

69.     Under the Escrow Agreement, Oink agreed not to disburse certain funds in escrow to MCL unless certain conditions were satisfied, including issuance of a Joint Release Instruction by both Little River and MCL.

70.     Little River deposited $6,420,000 with Oink in reliance upon the aforementioned promise.

71.     Oink disbursed $1,020,000 to MCL despite the non-occurrence of any condition for disbursement, in contravention of the Escrow Agreement.

72.     Oink continues to hold and accrue interest on Little River's remaining $5,400,000, which includes $4,380,000 that Little River was not even required to deposit under the Escrow Agreement.

73.     There is indicia that Little River is the victim of wrongdoing.  MCL apparently has a longstanding prior relationship with Oink.  During the course of this transaction, MCL provided

Little River with forged documentation and made false statements in order to induce Little River to deposit funds with Oink.

74.      In light of Oink's prior unauthorized disbursement of Little River's funds to MCL, the prior relationship between Oink and MCL, the forgery and false statements by MCL in connection with this transaction, a constructive trust is necessary to protect Little River's deposited funds and to ward against further harm to Little River.

## COUNT IV

### Unjust Enrichment

75.      Little River re-alleges all of the allegations in the foregoing paragraphs as if reasserted herein.

76.      Little River deposited $4,380,000 with Oink that Little River had no legal obligation to deposit.

77.      Little River has demanded its return and Oink is, without legal justification, refusing to return that amount.

78.      Little River deposited these funds based on false statements and forged documents.

79.      Oink continues to hold and accrue interest on these funds despite having no legal or equitable right to retain them.

80.      It is inequitable for Oink to retain any portion of Little River's deposit and/or the interest accruing on it.

## **PRAYER FOR RELIEF**

81.     Plaintiff seeks the following relief:

a.   A judgment in favor of Plaintiff on Count 1 in the amount of $6,420,000, plus interest and consequential damages in an amount to be proven at trial;

b.   A judgment in favor of Plaintiff on Count 2 in the amount of $6,420,000, plus interest and consequential damages in an amount to be proven at trial;

c.   As to Count 3, the imposition of a constructive trust over all of Little River's funds that remain on deposit in Oink's bank account at JPMorgan Chase Bank, N.A;

d.   A judgment in favor of Plaintiff on Count 4 in the amount of $4,380,000 plus interest and consequential damages in an amount to be proven at trial;

e.   Damages, including consequential, statutory, and punitive damages where applicable;

f.   Restitution, disgorgement, and other just equitable relief;

g.   An order granting injunctive relief, including but not limited to an injunction (i) foreclosing Oink from distributing any additional deposited funds pending further Order of this Court or (ii) requiring Oink to deposit all Little River-deposited funds into a court-controlled account;

h.   Pre and post judgment interest, costs, reasonable attorneys' fees, and expenses as appropriate; and

i.   Any other relief that the Court deems reasonable and just.

Dated this 9th day of August, 2022.

Respectfully Submitted,

**VM DIAZ & PARTNERS, LLC**
*Attorneys for Plaintiff Little River Transport, LLC*
1000 Fifth Street, Suite 400
Miami Beach, Florida 33139
T: (305) 704-3200
F: (305) 538-4928


By: *Victor M. Diaz, Jr. Esq.*
    Florida Bar No. 503800
    victor@diazpartners.com

and


Michael J. Garvey, Esq.
**SIMPSON THACHER & BARTLETT LLP**
*Attorneys for Plaintiff Little River Transport, LLC*
425 Lexington Avenue
New York, New York
Telephone: (212) 455-2000
Facsimile: (212) 455-2502
 (mgarvey@stblaw.com)